# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERENCE K. SUMPTER, et al.,**<br>    Plaintiffs | **CIVIL ACTION** |
| **VERSUS** | **No. 12-717** |
| **WILLIAM B. HUNGERFORD, JR., et al.,**<br>    Defendants | **SECTION "E"** |

## ORDER AND REASONS

Before the Court is Defendants'[1] motion to dismiss.[2] Plaintiffs[3] oppose Defendants' motion.[4] Defendants filed a reply in support of their motion.[5] Considering the briefs, the record, and oral argument, Defendants' motion is **GRANTED.**

## BACKGROUND

### I.    Factual Background

Around the time Hurricane Katrina devastated the Gulf Coast region in 2005, defendants William Hungerford ("Mr. Hungerford") and Tim Milbrath ("Mr. Milbrath")

---

[1] "Defendants" are: William Hungerford, Timothy Milbrath, Elizabeth Milbrath, Mary Hungerford, VP NOLA 1, LLC, 3200 Burgundy Street, LLC, Bartone, LLC, Bay-Algiers-JV, LLC, Bay-Bourbon-Ritas, LLC, Bay-Canal PJs, LLC, Bay-NOLA-Hospitality, LLC, Bay-NOLA-Mgmt, LLC, Bay-NOLA-Ventures-MD, LLC, Bay-One-Capital, LLC, Bay-PJs, LLC, Bay-Tulane Pjs, LLC, Bay-Wow Franchise 2, LLC, Bay-Wow, LLC, Bywater Holdings, LLC, Eleanor Holdings, LLC, Noble-Franchise 1&3, LLC, Noble-Lodging-Partners, LLC, Noble Lending Holdings, LLC, NobleOutReach-NOLA, LLC, NobleOutReach, Ltd., LLC, Noble-Employees, LLC, NobleReach-NOLA, LLC, NOP, LLC, Rita's Fajitas NOLA, LLC, Rita's Tequila Bar NOLA, LLC, Timone, LLC, VP NOLA, LLC, NobleOutReach Original Principals, LLC, NobleOutReach, LLC, NobleRealEstate-GP, LLC, and Noble-RE-Management, LLC. "Defendants" does not include NobleRealEstate Fund, L.P. (the "Fund").

[2] R. Doc. 187.

[3] "Plaintiffs" are: Terence Sumpter, Suzette Lopez, Abbas Barzani, Xue Li, Chong Kee Tan, Sandra Massie, Rong Zhou, Shuhai Li, Junjie Huang, Shuangmei Ge, Seyed Abad, Atefeh Abad, Xiao Tong Zhang, Wenjie Zhan, Li Wang, Li Wei Liu, Su Fang, Tianyi Liu, Ali Fuat Cercer, Faruk Cercer, Suat Ocal, Suheyla Ocal, Yiran Deng, Rong Man, Ming Chen, Reem Al Nasser, and Yu Lin Li.

[4] R. Doc. 194.

[5] R. Doc. 197.

1

entered into discussions with the City of New Orleans (the "City") regarding the possibility of creating a "Regional Center" for the purpose of accepting and coordinating foreign investment here. The proposed New Orleans Regional Center was advertised to the City as an investment opportunity for foreign investors looking to participate in a federal immigration pilot program (the "EB-5 Immigrant Investor Pilot Program" or the "EB-5 Program"). The EB-5 Program provides an opportunity for foreign nationals who contribute a certain amount of money to a for-profit business enterprise in the United States, and create a certain number of American jobs, to obtain legal permanent residency in the United States.[6]

Under the EB-5 Program, immigrant investor funds may be pooled together for investment in a Regional Center. Immigrant investors initially receive two year residencies, during which time the Regional Center is required to invest the immigrant's capital contribution in a job creating commercial enterprise that creates at least ten full-time jobs for U.S. workers. After an immigrant investor demonstrates to United States Citizenship and Immigration Services ("USCIS")[7] that his or her capital contribution was invested into a job-creating entity that produced at least ten full-time jobs for U.S. workers based on the investment, the investor (and his or her immediate family) is granted unconditional U.S. lawful permanent residency.

To further the EB-5 Program at the Regional Center in New Orleans, Mr.

---

[6] To obtain permanent legal residency, individuals must invest $1,000,000 in commercial enterprises in the United States, creating or preserving within two years at least 10 full-time jobs for U.S. citizens, excluding the investor and his or her immediate family members. The $1,000,000 investment is reduced to $500,000 if the investment is made in a high unemployment or rural area.

[7] USCIS is the governmental agency charged with administering the EB-5 Program.

Hungerford and Mr. Milbrath created NobleReach-NOLA, LLC ("NobleReach-NOLA") in May 2006. The City entered into a Memorandum of Understanding ("MOU") with Noble-Reach-NOLA, authorizing NobleReach-NOLA to act as the Regional Center's principal agent, charged with promoting the Regional Center and soliciting and managing investments from foreign nationals interested in the EB-5 Program. USCIS thereafter notified the City that it approved of the City's contractual arrangement with NobleReach-NOLA to operate the Regional Center.

After the MOU was signed, Mr. Hungerford and Mr. Milbrath formed another entity - NobleOutReach, LLC ("NOR"). NOR thereafter formed NobleRealEstateFund, LP ("the Fund") to serve as an entity into which foreign investors could invest their capital contributions in hopes of reaching the investment threshold required by the EB-5 Program and creating the requisite number of jobs. The Fund's general partner was Noble-RealEstate-GP, LLC. NOR also was responsible for, among many other things, providing and preparing immigration advice to potential investors and assisting those investors with their immigration paperwork. NOR created a series of documents that would be handed out to potential investors explaining the EB-5 Program, the Fund, and the risks and benefits of investing in the Fund.

In 2007, NOR issued a confidential private placement memorandum ("PPM") in connection with the placement of $50,000,000 of limited partnership interest in the Fund. The PPM detailed certain business ventures the Fund would invest in and outlined the Fund's objectives. The PPM also delineated the structure and management of the Fund, as well as described how the entities controlling the fund would be paid.

Beginning in 2008, Plaintiffs allege Mr. Hungerford and Mr. Milbrath, individually

and through various entities they formed, made representations to Plaintiffs in the PPM and elsewhere concerning how the Fund was structured, the types of projects the Fund would invest in, and how the financial returns of the Fund's investment would be shared. However, Plaintiffs claim as a result of Defendants' actions the Fund never turned a profit from its various investments. Moreover, Plaintiffs claim they relied on Hungerford and Milbrath to facilitate the immigration process with USCIS, yet none of the immigrant investors successfully obtained permanent residence through the EB-5 Program.

## II.  Procedural Background

A group of dissatisfied Fund investors, including Mr. Sumpter and others, brought this lawsuit as a derivative action, brought on behalf of the Fund, against NOR, Mr. Hungerford, Mr. Milbrath, and a number of other entities, including more than thirty limited liability companies created by Mr. Hungerford and Mr. Milbrath in their roles as administrators and managing partners of the Fund. Plaintiffs claim that Defendants never followed up on their promise to use the money invested to further the mission of the Fund thereby denying the investors the opportunity to seek permanent residency through the EB-5 Program.  Instead, Plaintiffs allege Defendants took the money invested and used it for their own gain and/or in other unnecessary and wasteful projects, in breach of their fiduciary duty to the Fund. Plaintiffs contend Defendants made various misrepresentations to the Plaintiffs regarding how their investments were being used, the profitability of the Fund's projects, and the status of the job-creating projects. Plaintiffs claim that as a result of Defendants' actions, none of the investors in the Fund successfully obtained permanent residency through the EB-5 Program.

Plaintiffs' original complaint asserted six state law derivative claims on behalf of the

Fund for breach of fiduciary duty, gross mismanagement, conversion and misappropriation, unjust enrichment, and intentional interference with contract.[8] Plaintiffs' original complaint alleged only diversity jurisdiction under 28 U.S.C. § 1332 and did not set forth any causes of action arising under federal law.

Plaintiffs thereafter sought and obtained leave to file an amended complaint.[9] Plaintiffs' first amended complaint asserted eleven state law derivative claims for mismanagement, breach of fiduciary duty, intentional interference with contract, unjust enrichment, and Louisiana Racketeering, as well as a derivative claim for violations of the Racketeer Influenced & Corrupt Organizations Act ("RICO") under federal law.[10] In the

---

[8] R. Doc. 1. Plaintiffs' six causes of action in the original complaint were:

(1) a derivative claim for breach of fiduciary duty against Mr. Hungerford, Mr. Milbrath, and Noble-RealEstate-GP;
(2) a derivative claim for gross mismanagement against Mr. Hungerford, Mr. Milbrath, and Noble-RealEstate-GP;
(3) a derivative claim for conversion and misappropriation against Mr. Hungerford and Mr. Milbrath;
(4) a derivative claim for unjust enrichment against all defendants;
(5) a derivative claim for intentional interference with contract against Mr. Hungerford and Mr. Milbrath;
(6) for appointment of a temporary and permanent receiver for the Fund, the Louisiana entity defendants, the Delaware entity defendants, and the Maryland entity defendants.

[9] R. Doc. 100.

[10] Plaintiffs' eleven causes of action in the first amended complaint are:

(1) a derivative action for breach of fiduciary duty on behalf of the Fund against Mr. Hungerford, Mr. Milbrath, and NobleRealEstate;
(2) a derivative action for gross mismanagement on behalf of the Fund against Mr. Hungerford, Mr. Milbrath, and NobleRealEstate;
(3) a derivative action for conversion and misappropriation on behalf of the Fund against Mr. Hungerford, Mr. Milbrath, Timone, LLC, Bartone, LLC, and NOR;
(4) a derivative action for unjust enrichment on behalf of the Fund against the wives of Mr. Hungerford and Mr. Milbrath;
(5) a derivative action for intentional interference with contract on behalf of the Fund against Mr. Hungerford and Mr. Milbrath;
(6) a derivative action for intentional interference with contract on behalf of the Fund against Mr. Hungerford and Mr. Milbrath;

amended complaint the Plaintiffs alleged this Court also had federal question jurisdiction over the subject matter in this case, pursuant to 28 U.S.C. § 1331, as a result of the federal RICO claim. Alternatively, Plaintiffs alleged diversity jurisdiction under 28 U.S.C. § 1332.

Defendants moved to dismiss this case under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[11] In their motion to dismiss, Defendants argued diversity jurisdiction was lacking, and because the federal RICO claim was insufficiently pled, the Court also lacked federal question jurisdiction. Plaintiffs opposed this motion to dismiss.[12] In their opposition, plaintiffs did not dispute that diversity jurisdiction was lacking, but argued that the Court had subject matter jurisdiction predicated on the RICO claim.

Before ruling on the Defendants' motion to dismiss, the Court disqualified the law firms of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC and Dilworth Paxon, LLP as

---

(7) a derivative action for intentional interference with contract on behalf of the Fund against Mr. Hungerford and Mr. Milbrath;
(8) a derivative action for intentional interference with contract on behalf of the Fund against Mr. Hungerford and Mr. Milbrath;
(9) a derivative action for aiding and abetting the breach of fiduciary duty under LA. CIV. CODE ANN. art. 2324 on behalf of the Fund against NOR, Bay-NOLA-Mgmt, LLC, Bay-NOLAVentures-MD, LLC, Bay-Bourbon-Ritas, LLC, VP NOLA, LLC, Noble-Franchise 1&3, LLC, Bay-One-Capital, LLC, Bywater Holdings, LLC, and Bay-Algiers-JV, LLC;
(10) a derivative action on behalf of the Fund for aiding and abetting conversion and misappropriation under LA. CIV. CODE ANN. art. 2324 against the "Entity Defendants";
(11) a derivative action for RICO violations on behalf of the Fund against Mr. Hungerford, Mr. Milbrath, Timone, LLC, Bartone, LLC, NOR, Noble-RealEstate-GP, Bay-NOLA-Mgmt, LLC, Bay-Bourbon-Ritas, LLC, VP NOLA, LLC, Noble-Franchise 1&3, LLC, Bay-One-Capital, LLC, Bywater Holdings, LLC; and
(12) a derivative action for violation of the Louisiana Racketeering Act on behalf of the Fund against Mr. Hungerford, Mr. Milbrath, and Noble-RealEstate-GP.

R. Doc. 102 (Amended Complaint); *see also* R. Doc. 110 (RICO Case Statement).

[11] R. Doc. 112.

[12] R. Doc. 128.

counsel for Plaintiffs in this matter.[13] The opposition to Defendants' motion to dismiss filed by these firms was stricken from the record.[14] Thereafter, the Court denied Defendants' motion to dismiss without prejudice and allowed Plaintiffs, after having enrolled new counsel, to file a second amended complaint addressing the deficiencies raised by the motion to dismiss.[15]

Plaintiffs' second amended complaint asserts eleven state law derivative claims for mismanagement, breach of fiduciary duty, intentional interference with contract, unjust enrichment, and Louisiana Racketeering. The second amended complaint also lodges a derivative RICO claim and, for the first time, a securities fraud claim under 15 U.S.C. § 78j(b) (Section 10(b)).[16] Plaintiffs' assert federal question jurisdiction exists under 28 U.S.C.

---

[13] R. Doc. 149.

[14] *Id.*

[15] R. Doc. 159.

[16] Plaintiffs' thirteen causes of action in the second amended complaint are:

> (1) a derivative action for breach of fiduciary duty on behalf of the Fund against Mr. Hungerford, Mr. Milbrath, and NobleRealEstate;
> (2) a derivative action for gross mismanagement on behalf of the Fund against Mr. Hungerford, Mr. Milbrath, and NobleRealEstate;
> (3) a derivative action for conversion and misappropriation on behalf of the Fund against Mr. Hungerford, Mr. Milbrath, Timone, LLC, Bartone, LLC, and NOR;
> (4) a derivative action for unjust enrichment on behalf of the Fund against the wives of Mr. Hungerford and Mr. Milbrath;
> (5) a derivative action for intentional interference with contract on behalf of the Fund against Mr. Hungerford and Mr. Milbrath;
> (6) a derivative action for intentional interference with contract on behalf of the Fund against Mr. Hungerford and Mr. Milbrath;
> (7) a derivative action for intentional interference with contract on behalf of the Fund against Mr. Hungerford and Mr. Milbrath;
> (8) a derivative action for intentional interference with contract on behalf of the Fund against Mr. Hungerford and Mr. Milbrath;
> (9) a derivative action for aiding and abetting the breach of fiduciary duty under LA. CIV. CODE ANN. art. 2324 on behalf of the Fund against NOR, Bay-NOLA-Mgmt, LLC, Bay-NOLAVentures-MD, LLC, Bay-Bourbon-Ritas, LLC, VP NOLA, LLC, Noble-Franchise 1&3, LLC, Bay-One-Capital, LLC,

7

§ 1331.

Defendants filed another motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6).[17] Defendants argue the Court lacks subject matter jurisdiction over this case because diversity jurisdiction was lacking at the outset of the case and Plaintiffs may not amend their complaint to add new federal law causes of action to create subject matter jurisdiction. Alternatively, Defendants argue the Court lacks subject matter jurisdiction because Plaintiffs' RICO claim is inadequately plead and their securities fraud claim is time-barred, leaving only Plaintiffs' state law claims. Plaintiffs oppose Defendants' motion, arguing their original complaint contains sufficient facts to place Defendants on notice of the federal law claims and that, as a result, the Court has had jurisdiction since the inception of the case. Plaintiffs do not dispute diversity jurisdiction was lacking at the time the original complaint was filed.[18] Plaintiffs also assert their second amended complaint asserts sufficient facts to plead a RICO claim and that their securities fraud claim is not time-barred because defendants' fraudulent actions tolled the statute of limitations.

---

|     | Bywater Holdings, LLC, and Bay-Algiers-JV, LLC; |
| --- | --- |
| (10) | a derivative action on behalf of the Fund for aiding and abetting conversion and misappropriation under LA. CIV. CODE ANN. art. 2324 against the "Entity Defendants"; |
| (12) | a securities fraud claim against Mr. Hungerford and Mr. Milbrath under 15 U.S.C. 78j(b) (Section 10(b)). |
| (12) | a derivative action for RICO violations on behalf of the Fund against Mr. Hungerford, Mr. Milbrath, Timone, LLC, Bartone, LLC, NOR, Noble-RealEstate-GP, Bay-NOLA-Mgmt, LLC, Bay-Bourbon-Ritas, LLC, VP NOLA, LLC, Noble-Franchise 1&3, LLC, Bay-One-Capital, LLC, Bywater Holdings, LLC; and |
| (13) | a derivative action for violation of the Louisiana Racketeering Act on behalf of the Fund against Mr. Hungerford, Mr. Milbrath, and Noble-RealEstate-GP. |

R. Doc. 176 (Second Amended Complaint).

[17] R. Doc. 187.

[18] R. Doc. 194, p. 12.

## ANALYSIS

### I. 12(b)(1) Standard and Federal Question Jurisdiction

A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction tests the court's statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001). When a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court should address the jurisdictional attack before addressing any attack on the merits. *Cloud v. United States*, 536 U.S. 960, 122 S.Ct. 2665, 153 L.Ed.2d 839 (2002).

Federal question jurisdiction is invoked when a plaintiff properly pleads a claim arising under the Constitution or the laws of the United States. *See Bell v. Hood*, 327 U.S. 678, 681-85, 66 S.Ct. 773, 90 L.Ed. 939 (1946). "A federal question exists 'if there appears on the face of the complaint some substantial, disputed question of federal law.'" *In re Hot-Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)(quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 632, 366 (5th Cir. 1995)). "The plaintiff is 'the master of her complaint,' and, as such, a determination that a cause of action presents a federal question depends upon the allegations of the plaintiff's well-pleaded complaint." *Medina v. Ramsey Steel Co.* 238 F.3d 674, 680 (5th Cir. 2001)(internal quotation marks omitted).

## II. Application

Plaintiffs' original complaint alleged only causes of action arising under state law. Because a "substantial, disputed question of federal law" was absent from the face of Plaintiffs' original complaint, federal question jurisdiction was lacking. Without complete diversity between the parties,[19] the original complaint failed to establish a proper basis for jurisdiction. Generally, under the "time-of-filing rule," a federal court cannot proceed if it lacked jurisdiction at the time the original complaint was filed. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 574-75, 124 S.Ct. 1920, 158 L.Ed.2d 886 (2004).

Plaintiffs argue the defective jurisdictional allegations in the original complaint were cured by subsequent amendments asserting causes of action under federal law. Under 28 U.S.C. § 1653 (Section 1653), "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." An amendment allowable under Section 1653 to cure a defective allegation of jurisdiction, even if leave of court was required, may supply the basis of federal jurisdiction. Section 1653 permits a plaintiff to amend his or her pleadings "to assert the correct jurisdictional basis" for a lawsuit when jurisdiction already exists. *See Carlton v. Baww, Inc.*, 751 F.2d 781 (5th Cir. 1981).

Section 1653, "originally designed to permit belated amendment to allege diversity of citizenship, was extended in the 1948 code revision to permit amendment of all

---

[19]Plaintiffs' original complaint alleged diversity jurisdiction. For a federal court to assert diversity subject matter jurisdiction, there must be complete diversity between the parties and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332 . Complete diversity is lacking in this case because the Fund is a defendant in this matter. The citizenship of the Fund, as a limited partnership, is determined by the citizens of all of its partners, both limited and general. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96, 110 S.Ct. 1015, 1021, 108 L.Ed.2d 157 (1990). The Plaintiffs are limited partners in the Fund. Therefore, the citizenship of the Plaintiffs is necessarily identical to the citizenship of at least one of the defendants, and complete diversity does not exist. Plaintiffs, bearing the burden of proving diversity jurisdiction exists, do not contest this fact.

jurisdictional allegations." *Mobil Oil Corp. v. Kelley* 493 F.2d 784, 788 (5th Cir. 1974). The Fifth Circuit has "repeatedly noted that Section 1653 is to be broadly construed to avoid dismissals of actions on purely 'technical' or 'formal' grounds." *Whitmire v. Victus Ltd.*, 212 F.3d 885, 887 (5th Cir. 2000) (citing *Miller v. Stanmore*, 636 F.2d 986, 990 (5th Cir. 1981)). However the Fifth Circuit also has cautioned against allowing parties to "use Section 1653 to retroactively create subject matter jurisdiction." *Whitmire*, 212 F.3d at 887 ("The cause for concern is readily apparent: 'never having power to act in the matter, the court never had authority to permit an amendment to the complaint.'" *Falise v. American Tobacco Co.*, 241 B.R. 63, 65 (E.D.N.Y. 1999)). Thus, while a plaintiff may use Section 1653 to "remedy inadequate jurisdictional allegations," Section 1653 may not be used to remedy "defective jurisdictional facts." *Newman-Green Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989).

The question facing the Court is whether the Court had the authority to allow the amendment of the complaint in this case to add federal causes of action, when jurisdiction was originally predicated on defective subject matter jurisdiction. The answer is in the affirmative only if the amendment was of the "technical" or "formal" variety and therefore permissible under Section 1653. The Fifth Circuit has held that an amendment comports with Section 1653 when it clarifies the citizenship of parties for diversity jurisdiction purposes because this is the correction of a technically defective allegation. *See Arena v. Graybar Elec. Co., Inc.,* 669 F.3d 214 (5th Cir. 2012); *Mullins v. Testamerica Inc.*, 300 Fed. Appx. 259 (5th Cir. 2008); *Nadler v. Am. Motors Sales Corp.,* 764 F.2d 409, 413 (5th Cir. 1985). The Fifth Circuit also has allowed a plaintiff to amend her complaint to allege the requisite facts showing that diversity jurisdiction existed as an alternative basis for subject matter jurisdiction when the complaint originally asserted only federal question

11

jurisdiction. *Whitmire*, 212 F.3d at 888. In these situations, our circuit court has found the amendments would not "create jurisdiction where it did not previously exist." *Id.*

On the other hand, the Fifth Circuit has declined to exercise jurisdiction when plaintiffs sought leave to amend their complaint to reassert federal claims to serve as statutory bases for federal question jurisdiction when those claims had been previously dropped from the complaint. *Boelens v. Redman Homes, Inc.*, 759 F2d 504 (5th Cir. 1985). Jurisdiction also has been found lacking when the plaintiffs amended their complaint to assert an entirely new federal claim against a new defendant. *In re Katrina Canal Breaches Litig.*, 342 Fed. Appx. 928 (5th Cir. 2009). The Fifth Circuit found these amendments to be impermissible attempts to "create an entirely new jurisdictional basis to provide competence in a court which lacked authority over the case *ab initio.*" *Id.* (quoting *Falise*, 241 B.R. at 67).[20]

Although Fifth Circuit precedent is not entirely clear or consistent,[21] the Court is convinced the clearest, most recent cases dictate a finding that Plaintiffs' amendments, by adding new federal causes of action, are not of the "formal" or "technical" variety permissible under Section 1653. Because the original complaint lacked a valid basis for

---

[20]The Court notes that at least one other circuit has held that amendments adding federal claims are sufficient to establish jurisdiction but this was a case in which the amendment was of right. *See Connectu, LLC v. Zuckerberg*, 522 F.3d 82 (2d. Cir. 2008)(allowing a plaintiff to assert a new federal cause of action by amendment). *See also Advani Enterp. v. Underwriters at Lloyds*, 140 F.3d 157 (2d. Cir. 1998)(allowing a plaintiff to amend its complaint to add a federal admiralty claim because admiralty jurisdiction was "apparent from the face of the [original] complaint"); *Curley v. Brignoli*, 915 F.2d 81 (2d. Cir. 1990)(finding that a court must "liberally construe plaintiff's complaint to determine whether the facts set forth justify taking jurisdiction on grounds other than those most artistically pleaded." (quotations and citation omitted)). The Second Circuit also has noted that "there is a developing consensus that a circuit court may look to unpleaded bases of federal subject matter jurisdiction." *Id.* However, the Fifth Circuit's pronouncements require this Court to conclude that Plaintiffs' amendments, adding entirely new federal claims, were impermissible attempts to create subject matter jurisdiction.

[21]*See Sessions v. Rusk State Hosp.*, 648 F.2d 1066 (5th Cir. 1981)("A complaint that is defective because it does not allege a claim within the subject matter jurisdiction of a federal court may be amended to state a different claim over which the federal court has jurisdiction.")(citing *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1159-60 (5th Cir. 1981)).

federal question jurisdiction, the amended complaints were impermissible attempts to "create jurisdiction where it did not previously exist." *Whitmire*, 212 F.3d at 888. The Fifth Circuit clearly has held "an amendment may not remedy a jurisdictional defect by asserting a cause of action to serve as a statutory basis for federal question jurisdiction." *In re Katrina Canal Breaches Litig.*, 342 Fed. Appx. at 932 (citing *Whitmire*, 212 F.3d 885; *Boelens*, 759 F.2d 504). The fact that in this case Plaintiffs were given leave of court to amend their complaint to include federal claims is immaterial. It is settled that Section 1653 precludes the Court from authorizing an amendment when it never had jurisdiction to do so.

## CONCLUSION

The Court, lacking subject matter jurisdiction over Plaintiffs' original complaint, did not have the authority to allow Plaintiffs to amend their complaint to include federal law claims. Plaintiffs' amendments were not of the "technical" and "formal" variety, but rather sought to create subject matter jurisdiction where none existed. As a result, this Court lacks jurisdiction to hear this dispute.

Accordingly, **IT IS ORDERED** that Defendant's Motion to Dismiss be and is **GRANTED**.[22]

New Orleans, Louisiana, this  11th  day of July, 2014.

                                              _____
                                                    **SUSIE MORGAN**
                                       **UNITED STATES DISTRICT JUDGE**

---

[22] Because the Court lacks jurisdiction, the Court need not reach Defendants' arguments under Rule 12(b)(6).

13